This case appears from the opinion of the Court.
Jonas Wood had five children, James, Dempsy, Sally (the wife of Lassiter), Amy (the wife of Waters), who are defendants, and Mary, the intestate of the plaintiff (who was her husband).
In July, 1836, Jonas Wood executed a deed of gift, by which he gave certain slaves to James, and certain other slaves to Dempsy, and other slaves to Mary and Amy. Afterwards Mary married the plaintiff Uzzle.
In 1837, the slaves, 15 or 20 in number, were sold by the sheriff under executions. Lassiter, the husband of Sally, became the purchaser (amount of sale $91.50).
In 1838, Lassiter conveys the slaves to Jonas Wood, and afterwards by several deeds of gift he conveys them to the defendants.
The bill charges that after the intermarriage of the plaintiff with his daughter, Jonas Wood, being dissatisfied, desired to "upset" the deed of gift executed in 1836, which had been duly registered, and applied to a gentleman learned in law, who advised him that although the deed was registered, still if "they could procure the creditors of Jonas Wood" to *Page 158 
sue, take judgments and issue executions, and thereby have the property sold and purchased by a friend, he could reconvey to Jonas Wood, and thus"upset" the deed of gift.
That in pursuance of this advice Jonas Wood, by payment or (228) by substitution of other security, got control of the debts which were outstanding against him, and had judgments taken, and executions issued, under which the property was sold, having previously made an arrangement with Lassiter that he should bid off the property at the sheriff's sale, and then reconvey to Wood. All which was done for the avowed purpose of "upsetting the deed of gift made in 1836," so that Jonas Wood might give off the property to his four other children, to the exclusion of his daughter Mary, who had married Uzzle, for whom he had no kind affection.
The answers but faintly deny the allegations, and rest the defence mainly upon long possession and the statute of limitations. The proofs fully support the allegations of the bill.
It is clearly settled that although equity will not enforce an executory agreement made without consideration, yet if the gift be executed, and rights have become vested, they will be protected.
By the deed of 1836 the plaintiff's intestate acquired title to the slaves in controversy, subject only to the rights of the creditors of the donor. He could not defeat or avoid the effect of his gift, and a court of equity will prevent that from being done indirectly which could not have been done directly. The effect of the sale by the sheriff was to vest the legal title in Lassiter, who passed it to the donor. But as the proceeding in the name of the creditors was not bona fide or at their instance, and was a mere contrivance of the donor with intent to avoid the effect of his deed of gift, he held the legal title thus acquired as a trustee for the donees; and the defendants to whom he subsequently conveyed having full notice, and three of them being in fact particeps criminis, will in this Court be converted into trustees, and be considered as holding the property in trust for the donees under the deed of 1836. So the plaintiff's intestate has a clear equity to call for a conveyance, and an account in regard to the slaves given to her by that deed.
When a trust is not created by agreement of parties, but the (229) person having the legal title is converted by a decree into a trustee, on the ground of fraud, he may insist that his possession was adverse, and protect himself under the statute of limitations. Are the defendants protected by the statute, or does the case come within the saving in favor of femes covert?
For the defendants it is insisted that this is the suit of the husband; that upon his marriage the slaves were reduced into his possession and became his property, so that the wife had no further concern with *Page 159 
them. For the plaintiff it is insisted that the possession taken by the husband was subject to the rights of the creditors of the donor, and that the proceedings in their names had the effect to supersede and wipe away all right which the husband had acquired; and that the equity to convert the donor, after the title had vested in him, into a trustee, was a chose in action of the wife.
After much consideration we have arrived at the conclusion that the effect of the sale by the sheriff was to defeat entirely the right acquired by the husband, which rested upon the fact of his having taken possession, and that the equity to convert the defendants into trustees was a right of the wife.
Suppose a woman purchases a slave, and marries, and the slave is recovered from the husband by one having title paramount; it is clear that the action against the vendor upon the warranty must be in the name of the wife. She made the contract, and the right to sue for a breach of it is hers. The effect of the recovery against the husband is to defeat entirely all right on his part, which rested upon the fact of his having had the slave in possession. So, as it seems to us in our case, when the slaves were taken from the husband, and the title became vested in the purchaser at sheriff's sale, the effect was to defeat all right on the part of the husband, which rested upon the fact of his having had the slaves in possession, because that possession was overreached and superseded and blotted out by a paramount right. (230)
An instance where possession is overreached, and the effect of it superseded is given by my Lord Coke. Father dies; the son, who is married, enters and afterwards assigns dower to his mother; her seizin overreaches that of the son; so that the son's wife cannot support a claim to dower, in regard to the part covered by the mother's dower. Hence the maxim "Dos dedote peti non debet."
As the equity to convert the defendants who acquired the legal estate with notice into trustees was a right of the wife, it was proper to institute this suit in the name of her administrator, and of course the defendants cannot protect themselves by the statute of limitations.
Decree for plaintiff.
Cited: Taylor v. Dawson, 56 N.C. 91, 93; University v. Bank, 96 N.C. 287. *Page 160 
(231)